**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00180-GNS-HBB**

**ENCORE ENERGY, INC.**                                                                          **PLAINTIFF**

**VS.**

**MORRIS KENTUCKY WELLS, LLC**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Plaintiff, Encore Energy, Inc. ("Encore"), to Disqualify Attorney, Michael Vitale, and the law firm of English, Lucas, Priest, and Owsley, LLP ("ELPO") from representing Morris Kentucky Wells, LLC ("Morris") (DN 9). Defendant Morris has filed a response in opposition (DN 11). Encore filed a reply (DN 17). The matter stands submitted to the undersigned for ruling.

## Background

This is a declaratory action brought by Encore seeking declaration from the Court that: 1) it is a "financial institution" within the meaning of 15 U.S.C. § 6801; 2) pursuant to 15 U.S.C. § 6801, Encore is prohibited from disclosing nonpublic personal information related to its investors; 3) 15 U.S.C. §6801 preempts Kentucky partnership law to the extent Kentucky law would require Encore to disclose nonpublic personal information related to investors; 4) pursuant to the Partnership Agreements, Morris has no right to the identities of other private investors in the Partnerships; 5) by virtue of 15 U.S.C § 6801 and the express terms of the Partnership Agreement, Morris is not entitled to receive any nonpublic personal information related to Encore's investors in the Partnerships; and 6) pursuant to the "turnkey" agreement contained within the offering

memoranda, Morris is not entitled to information regarding Encore's expenditures and contracts (DN 1 PageID # 1-2). This action was filed in response to a lawsuit initiated by Morris in Warren Circuit Court seeking, *inter alia*, an order declaring the Partnerships general partnerships under Kentucky law and requiring Encore to disclose nonpublic personal information of other Partnership investors. The Warren Circuit action is held in abeyance pending the resolution of the present action (DN 9-2 PageID # 379, Exhibit A).

Upon learning that attorney Michael S. Vitale and his law firm, ELPO, were retained to represent Morris in this matter, Encore sent a letter to ELPO notifying them that they believed ELPO's representation of Morris would be contrary to the Kentucky Rules of Professional Conduct. Encore claims, through prior representation of Encore, attorneys with ELPO became privy to confidential information relevant to the disputed issues in this action (Id. at 382-83, Exhibit B).

ELPO represented Encore from May 2011 to March 2012 (DN 9-4 PageID # 386, Exhibit C; DN 11-1 PageID # 415). The scope of the representation was set forth in an engagement letter. The letter provided that ELPO would: 1) prepare and file documents to form Encore Holdings, LLC—the majority stockholder of Plaintiff, Encore Energy Inc.; 2) provide advice on an as-requested basis concerning human resources and real estate issues; and 3) represent Encore executives in litigation against Allied Energy, Inc. The engagement letter explicitly states ELPO was not retained to provide advice on securities or regulatory matters (Id. at 386-89).

## Discussion

"The ethical standards by which federal courts measure an attorney's professional conduct are standards defined by federal law." Carlsen v. Thomas, 159 F.R.D. 661, 663 (E.D. Ky. 1994). Attorneys that practice in the Western District of Kentucky must follow the standards set forth in

the Rules for Professional Conduct as adopted by the Kentucky Supreme Court. Harper v. Everson, 2016 U.S. Dist. LEXIS 187887 at *7-8 (W.D. Ky. 2016); *See* 6th Cir. R. 469b); *See* LR 83.1, 83.2, 83.3; Ky. Sup. Ct. R. 3.130. Kentucky Rule of Professional Conduct 1.9 governs questions of disqualification. Entitled "Duties to former clients," Rule 1.9 states in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> …
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> >
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

The Sixth Circuit has articulated a three-part test for disqualifying counsel that tracks Rule 1.9. An attorney should be disqualified only if a Court finds that 1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; 2) the subject matter of those relationships was substantially related; and 3) the attorney acquired confidential information from the party seeking disqualification. Dana Corp. v. Blue Cross Blue Shield Mutual, 900 F.2d 882, 889 (6th Cir. 1990). Rule 1.10 imputes Rule 1.9 to the contested counsel's law firm:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the

> prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

The party moving for disqualification bears the initial burden of persuasion and proof on its motion. Carlsen v. Thomas, 159 F.R.D. 661, 669 (E.D. Ky. 1994).

There is no dispute that an attorney-client relationship previously existed between Encore Energy and ELPO. At issue is whether the present matter is substantially related to the previous relationship and whether ELPO acquired confidential information from Encore during that relationship.

"Matters are substantially related…if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the proper representation would materially advance the client's position in the subsequent matter." Ky. S. Ct. R. 3.130 (1.9 cmt. 3). A commonality of legal claims or issues is not required. The Court must look to the type of information that the potentially conflicted attorney would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client. Bowers v. Ophthalmology Group, 733 F. 3d 647, 652 (6th Cir. 2013). The court must reconstruct the attorney's representation of the former client to infer what confidential information could have been imparted in that representation and decide whether that information has any relevance to the attorney's representation of the current client. Bowers, 733 F.3d at 652 (citing Koch v. Koch Indus., 798 F. Supp. 1525, 1526 (D. Kan. 1992)).

The present action is not of the same transaction or legal dispute that caused ELPO to be previously retained by Encore. The question is whether there is a substantial risk that confidential factual information was obtained in the previous matter that would advantage Morris. See Ky. S. Ct. R. 3.130 (1.9 cmt. 3). In the present action, Encore Energy is seeking declarations from the

Court regarding its status as a financial institution and its rights under partnership law. ELPO's previous representation of Encore, and certain Encore executives, pertained to litigation concerning a non-compete clause in Encore executives' employment contracts with former employer Allied Energy (DN 9-5 Page ID # 393, Exhibit D).

Encore is seeking a declaration that it is a financial institution pursuant to 15 U.S.C. § 6801 (DN 1 PageID # 1-2). A financial institution is "any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. §1843). 15 U.S.C. § 6809. The Bank Holding Act generally defines a financial company as a company that engages in activity that is financial in nature or is complimentary to financial activity. The Act then lists examples of activities that are considered financial in nature such as, lending, exchanging, transferring, investing for others, or safeguarding money or securities.[1] To determine if Encore is a financial institution as contemplated by 15 U.S.C.§ 6801, the Court will have to examine Encore's business model and ascertain if it engages in any of the listed activities in The Bank Holding Act.

ELPO previously represented Encore and individual executives in litigation concerning a covenant not to compete in an employment contract. Covenants not to compete "play a critical role in business and are favored as long as they are reasonable in geographic scope and duration." Managed Health Care Assocs. v. Kethan, 209 F. 3d 923, 928 (6th Cir. 2000). A central issue in the litigation would have been whether the non-compete clause was valid and enforceable. That inquiry demands the Court consider, among other things, "the nature of the business or profession and employment, including the character and service that is performed by the particular employee. Fruit of the Loom, Inc. v. Zumwalt, 2015 U.S. Dist. Lexis 161491 (W.D. Ky. 2015) (*citing* ISCO

---
[1] For full list see 12 U.S.C. § 1843(k)(4)(A)-(H)

Industries, Inc. v. Shugart, 2014 U.S. Dist. LEXIS 72245 (W.D. Ky. 2013)) (*quoting* Crowell v. Woodruff, 245 S.W. 2d 447, 449 (Ky. 1951)). In other words, the court needed to determine if Encore's business is similar enough to Allied's business to violate the terms of the covenant not to compete. The nature of Encore's business is precisely what is at issue in this declaratory action. The Court will need to ascertain what type of business Encore is engaged to determine if it qualifies as a financial institution under 15 U.S.C. § 6801. There is a substantial risk that ELPO acquired information about Encore's business model in its previous representation of Encore and its executives.

This is confirmed upon closer examination of the litigation. Allied Energy is in the business of managing oil and gas partnerships and enterprises, aiding said partnerships and enterprises in the exploration of oil and gas production, and consulting said partnerships and enterprises (DN 11-2 PageID # 418-19). Allied sued Encore and its executives for violating confidentiality agreements that prevented contact with Allied's clients upon termination of employment. Allied accused its former executives of soliciting investments from Allied investors, exploiting Allied's customer list to secure investments, and converting Allied property to their own use and economic advantage to the detriment of Allied (Id. at 418-425). Allied sought a declaration prohibiting Encore and its executives from possessing, disclosing, communicating or making use of Allied's trade secrets and confidential and proprietary information—of particular concern was Allied's customer list and contact information (Id. at 428-429). Despite ELPO's claims to the contrary, it seems unlikely the firm could have adequately represented Allied in this litigation without learning confidential information related to Encore's business activities, the identity of its investors, and the identity of its customers. ELPO actually requested Encore

preserve all documents related to this information in their engagement letter (DN 9-4 PageID # 388).² That information is at the heart of the matter presently before the Court.

Morris argues that any confidential information ELPO received in the prior litigation has been made irrelevant by the passage of time (DN PageID # 407). ELPO's representation of Encore terminated in 2012, approximately seven years ago. However, at issue in this case is information related to partnerships formed by Encore in 2014, just two years after ELPO's relationship with Encore concluded. It is not pertinent that Morris is seeking this information in 2019.

Morris further argues that ELPO is not in possession of any confidential information relating to Encore, nor has Encore provided what confidential information it fears ELPO has acquired (DN 11 PageID # 408-09). But divulging this information would defeat the purpose of preserving confidential information. "The former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." Ky. S. Ct. R. 3.130; Ky. SCR 1.9 cmt. 3. Rather, the inquiry focuses on the general features of the matters involved and the inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation. Restatement (Third) of the Law Governing Lawyers § 132 cmt. d.

When confronted with a motion to disqualify counsel courts "must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice. Manning v. Waring, Cox, James, Skylar & Allen, 849 F. 3d 222, 224

---

² The letter asks, "PLEASE PRESERVE all documents or other information, including electronic files, that may be in the Companies' possession, custody or control that relate to Allied Energy, Inc. or its affiliated entities, your termination by Allied Energy, Inc., the termination of Mr. Brady and Mr. Turner's employment with Allied, the hiring of Mr. Brady and Mr. Turner by Encore Energy, Inc. or any activity that could be considered competitive with Allied Energy, Inc., including all information relating to contacts with clients or potential clients of Allied Energy, Inc. or of Encore Energy, Inc."

(6th Cir. 1988). Confronted with this balancing act, the Kentucky Supreme Court recently abandoned the appearance of impropriety as a basis for disqualifying counsel. Marcum v. Scorsone, 457 S.W. 3d 710, 717-18 (Ky. 2015). However, this matter presents more than a mere appearance of impropriety. This declaratory action is substantially related to ELPO's prior representation of Encore because there is a substantial risk that Encore divulged confidential information to ELPO that would advantage Morris in the present matter. See Dana Corp. v. Blue Cross Blue Shield Mutual, 900 F.2d 882, 889 (6th Cir. 1990); Ky. S. Ct. R. 3.130(1.9 cmt. 3).

Order

**WHEREFORE** it is ordered that Encore's motion to Disqualify Attorney, Michael Vitale, and the law firm of English, Lucas, Priest, and Owsley, LLP from representing Morris Kentucky Wells, LLC is **GRANTED**.

Copies: Counsel