UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00180-GNS-HBB

ENCORE ENERGY, INC.,
in its capacity as the Managing General Partner for the
2014 Encore Kentucky 10-Well Partnership,
2014-B Encore Kentucky 10-Well Partnership,
and 2015-D Encore Kentucky 10-Well Partnership					PLAINTIFF

v.

MORRIS KENTUCKY WELLS, LLC							DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 26) and Plaintiff's Motion for Leave to File Amended Complaint (DN 27). These motions are now ripe for adjudication. For the reasons that follow, Defendant's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

### I.     BACKGROUND

Plaintiff Encore Energy, Inc. ("Encore") serves as the Managing General Partner ("MGP") for a number of Kentucky partnerships related to the exploration and extraction of oil in and around Warren County, Kentucky. (Compl. ¶ 9, DN 1). To form the partnerships, Encore offers "units" of the partnership for sale to investors. (Compl. ¶ 10). William S. Morris ("Morris") purchased several units in various partnerships owned by Encore and later assigned all of his various partnership interests to Defendant Morris Kentucky Wells, LLC ("MKW"). (Compl. ¶¶ 26, 28, 30).

In the spring of 2018, Morris, purportedly on behalf of MKW, began seeking information from Encore about the partnership interests. (Compl. ¶ 36). Encore provided some of the

1

information Morris requested, but declined to provide Morris with certain information Encore believed to be personal in nature and other information the disclosure of which Encore believed would violate federal law. (Compl. ¶¶ 40-46).

In response to Encore's refusal, MKW filed a declaratory judgment action in Warren Circuit Court (Kentucky), to obtain the information it had requested from the partnerships. (State Ct. Compl. 7, DN 26-1). A day later, Encore filed this declaratory judgment action, seeking to prevent MKW from obtaining the information it seeks. (Compl. 19-20).

MKW now moves to dismiss the Complaint for lack of subject matter jurisdiction. (Def.'s Mot. Dismiss, DN 26). Encore responded and moved to amend its complaint to address a deficiency in subject matter jurisdiction identified by MKW. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 28; Pl.'s Mot. Leave Amend, DN 27).

## II. **DISCUSSION**

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not create an independent basis for federal subject matter jurisdiction. A plaintiff seeking to invoke the Act must establish an independent source of a federal court's subject matter jurisdiction over the plaintiff's claims. *See Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citations omitted). MKW maintains that no such basis exists for subject matter jurisdiction over Encore's declaratory judgment action.

As a preliminary matter, although MKW moves "pursuant to Federal Rule of Civil Procedure 12(c)," the motion is properly considered under Fed. R. Civ. P. 12(b)(1). (Def.'s Mot. Dismiss 1). A "Rule 12(c) motion is a decision on the merits that cannot be decided without first determining whether subject matter jurisdiction is proper . . . ." *Ogle v. Church of God*, 153 F. App'x 371, 375 (6th Cir. 2005). "[I]f a party raises an issue as to the court's subject matter

jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. Aug. 2019 update) (citations omitted). As a sister court has explained:

> [T]he motion for judgment on the pleadings, pursuant to Rule 12(c), must be treated as a motion to dismiss for lack of subject matter jurisdiction. It raises only jurisdictional issues. . . .
>
> It is settled that a motion for judgment on the pleadings is a motion for a judgment on the merits. Since defendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion as one to dismiss for lack of subject matter jurisdiction.

*Collins v. Bolton*, 287 F. Supp. 393, 396 (N.D. Ill. 1968) (internal citations omitted); *see also Coxco Realty, LLC v. U.S. Army Corps of Eng'rs*, No. 3:06-CV-416-S, 2008 WL 640946, at *2 (W.D. Ky. Mar. 4, 2008) ("When a Rule 12(c) motion is based upon the lack of subject matter jurisdiction, . . . the standard for judgment on the pleadings is the same as a motion to dismiss for lack of subject matter jurisdiction." (citation omitted)).

"Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

A. **Federal Question Jurisdiction**

MKW argues that this Court lacks federal question jurisdiction under the well-pleaded complaint rule. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13

(1936)). The U.S. Supreme Court explained the well-pleaded complaint rule in the context of federal declaratory judgment actions:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 242-43 (1952) (citations omitted). "[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 16 (1983) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767, at 744-45 (2d ed. 1983)).

Encore argues that the well-pleaded complaint rule is inapplicable because that rule rests on MKW's ability to file an underlying state court suit which was impossible before MKW obtained a certificate of authority in Kentucky on December 18, 2018. (Pl.'s Resp. Def.'s Mot. Dismiss 10, DN 28). The U.S. Supreme Court in *Public Service Commission* made clear that application of the well-pleaded complaint rule merely requires courts to examine the character of the federal-plaintiff's complaint to see whether, in reality, "[t]he plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant *may* assert in [state] court[]." *Pub. Serv. Comm'n*, 344 U.S. at 242 (emphasis added). A technical impediment purportedly preventing MKW from filing suit in state court, an impediment that can be (and apparently has

4

been) remedied, does not foreclose application of the well-pleaded complaint rule. (Pl.'s Resp. Def.'s Mot. Dismiss Ex. 3, at 1, DN 28-3).

The pending state-court action filed by MKW is a declaratory judgment action seeking to enforce its purported rights under the Kentucky Uniform Partnership Act to obtain information about Encore's partnerships in which MKW has invested. (State Ct. Compl. ¶¶ 24-31). MKW's state court declaratory judgment action, however, has nothing to do with federal law. The only semblance of federal law existing in this case is Encore's belief that the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§ 6801 to 6809, restricts MKW's ability to access the information it seeks. (Compl. ¶¶ 47-76, 88-95). Encore's assertion in this regard, however, runs afoul of the well-pleaded complaint rule because Encore is not asserting a claim under the GLBA but rather seeks to use the GLBA defensively—i.e., to avoid having to disclose the information MKW seeks. Courts have consistently recognized that the GLBA does not afford a private right of action: "The Eighth Circuit Court of Appeals, a handful of Sixth Circuit district courts, and various other district courts have recognized that [the Gramm-Leach-Bliley Act] does not grant a private cause of action." *Vinton v. Certegy Check Servs., Inc.*, No. 1:08-cv-881, 2009 WL 2777095, at *2 (W.D. Mich. Aug. 31, 2009) (citing *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007); *In re Lentz*, 405 B.R. 893, 899 (N.D. Ohio 2009); *In re French*, 401 B.R. 295, 310 (E.D. Tenn. 2009)); *see also* Richard J. Link, 5 A.L.R. Fed. 2d 497, § 18 (2005) (citing other cases for same proposition). Hence, Encore can only use the GLBA as a purported affirmative defense. "[B]ut for the availability of the declaratory judgment procedure," Encore's GLBA "claim would arise only as a defense to a state created action" because the GLBA does not afford a private right of action; therefore, "jurisdiction is lacking." *Franchise Tax Bd.*, 463 U.S. at 16. The Court possesses no federal question jurisdiction over the Complaint.

## B. Diversity Jurisdiction

MKW also asserts the absence of diversity jurisdiction, specifically that Encore cannot establish the requisite amount in controversy. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ."). As part of the relief sought in this case, Encore requests injunctive relief to prevent MKW from accessing certain information from Encore.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted). The object of the litigation here is to prevent MKW from obtaining Encore's information and records. Other courts have dealt with the amount-in-controversy requirement in claims for injunctive relief for the production of or quashing subpoenas for business information and records. "[A] plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is 'sufficiently measurable and certain to satisfy the . . . amount in controversy requirement . . . .'" *No-Burn, Inc. v. Murati*, No. 5:08-cv-1990, 2008 WL 5725679, at *3 (N.D. Ohio Sept. 25, 2008) (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1269 (11th Cir. 2000)). In *Murati*, the court found that an order directing a corporation to provide the plaintiff with complete access to the corporation's records "would have, on its face, no monetary value." *Id*. The court reasoned that this sort of injunctive relief was "too speculative and immeasurable to satisfy the jurisdictional amount." *Id*. at *4; *see also Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 677 (S.D. Ohio 2003) ("Whether inspection of the corporate records would lead in the future to any benefit to plaintiff . . . [was] 'too speculative and immeasurable to satisfy the amount in

controversy requirement.'" (quoting *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997))).

Similarly, in *Sierp v. DeGreen Partners LP*, No. CV-14-02353-PHX-DGC, 2015 WL 464338, at *2-3 (D. Ariz. Feb. 4, 2015), the court concluded that the plaintiffs' request for a court-ordered inspection of the records and books of a corporation could not be reduced to a monetary value so as to satisfy the amount in controversy requirement. *Id*. In its analysis, the court noted that "[a]mple precedent supports the Court's conclusion. Addressing the question presented in this case, courts have found that the 'right to inspect corporate documents . . . cannot be assigned a monetary value[.]'" *Id*. at *2 (alteration in original) (quoting *Davis*, 259 F. Supp. 2d at 676).

This Court finds no material distinction between the injunctive relief sought in *Murati* and *Sierp*—i.e., a court-ordered inspection of a corporation's records—and the injunctive relief sought by Encore here. As such, Encore cannot meet the requisite amount-in-controversy requirement for federal court diversity jurisdiction because Encore's requested relief is too speculative and immeasurable to satisfy that requirement.

Encore argues that the disclosure of the information MKW seeks could result in potential violations of the GLBA whereby Encore could be liable for fines of up to $1 million for each separate violation. *See* 12 U.S.C. § 5565(c)(2)(C). However, "[i]t is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur." *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 129 (1892). "[T]he possibility that [a fine or penalty] may be invoked is of such speculative nature insofar as the actual controversy between the parties is concerned that it will not support an action in which the jurisdiction amount in

7

required." *Alterman Transport Lines, Inc. v. Pub. Serv. Comm'n of Tenn.*, 259 F. Supp. 486, 493 (M.D. Tenn. 1966); *see also Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543-44 (3d Cir. 1995) (deeming "fines that [plaintiff] might have to pay in administrative proceedings" as being too speculative in determining the amount in controversy). "The amount in controversy constitutes the pecuniary results that flow directly and with a fair degree of probability from the litigation itself, not from collateral sources. 'Collateral sources' include incidental consequences, such as fines and expenses that a party may incur as a result of judgment." *Smith Prod. Co. v. Baldwin*, 106 F.3d 403, 1997 WL 34742, at *3 (7th Cir. 1997) (internal citations omitted) (citations omitted). Encore cannot use potential fines to satisfy the amount-in-controversy requirement.

Encore cites to *American Premier Underwriters, Inc. v. Estate of Chizum*, No. 3:14-CV-351-JD, 2015 WL 3657715 (N.D. Ind. June 11, 2015), to support its position that potential fines may be considered for amount-in-controversy purposes. *Chizum*, however, involved stipulated fines arising from a consent decree between the plaintiffs and the EPA. *Id*. at *3. That concrete and definite fine contrasts with the alleged fines at issue in this case, fines that would only potentially arise upon a subsequent determination that Encore's disclosure of information actually violated the GBLA. These kinds of "additional determination[s]" of a potential fine are simply too speculative to satisfy the amount-in-controversy requirement. *See Torres v. State Farm Mut. Auto. Ins. Co.*, 478 F. Supp. 2d 924, 926-28 (E.D. Mich. 2007) (refusing to consider potential fine amount in calculating requisite amount-in-controversy because of uncertainty in determining whether statutory prerequisite for imposition of fine was satisfied).

Finally, Encore asserts that MKW seeks to inspect private records and information concerning some of its investors. As such, Encore argues that "the value of the various accredited investor's personal information surely exceeds the value of $75,000, especially in today's data-

8

driven economy" because "Accredited Investors must have a net worth in excess of $1 million, excluding their primary residence." (Pl.'s Resp. Def.'s Mot. Dismiss 16, DN 28). Encore, however, fails to cite to any authority supporting the assertion that for disclosure of corporate records, investors' net worths satisfy or even can be used in determining the amount-in-controversy requirement. Nor does Encore provide a calculation of the monetary impact from its disclosure of investors' private information. When faced with similar arguments from the plaintiffs in *Sierp* that the court should expand the bases used to satisfy the amount-in-controversy requirement, the court noted: "Plaintiffs simply seek to inspect [the corporation's] records. . . . The particular thing sought to be accomplished is the inspection of [the corporation's] records." *Sierp*, 2015 WL 464 338, at *3. Encore has not pleaded any facts showing the benefit to be obtained by protecting the information of its investors is sufficiently measurable and certain to satisfy the amount in controversy requirement.

Encore's motion for leave to amend its Complaint deals entirely with attempting to plead the requisite amount in controversy. A district court may deny a motion to amend where the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment . . . is futile if it would not survive a motion to dismiss." *Dearborn Fed. Sav. Bank v. F.D.I.C.*, No. 13-10833, 2014 WL 320950, at *5 (E.D. Mich. Jan. 29, 2014) (rejecting proposed amendments because the "Court lack[ed] subject matter jurisdiction to hear Plaintiff's [proposed added] claims . . . ." (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005))). Encore has alleged nothing further in its Amended Complaint to substantiate its assertion that the amount in controversy requirement is satisfied here. Encore has simply proffered in its proposed Amended Complaint the conclusory allegation, lacking in its original complaint, that "the amount in

controversy exceeds the sum of $75,000." (Am. Compl. ¶ 4, DN 27-1). This assertion, however, does nothing to dispel the speculative and immeasurable nature of the relief Encore seeks.

Because the Court lacks jurisdiction over Encore's claims,[1] the Complaint is dismissed. Additionally, because the claims asserted in the proposed Amended Complaint are futile, Encore's motion for leave to amend is denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (DN 26) is **GRANTED**, and the Complaint is **DISMISSED**. The Clerk shall strike this matter from the active docket.

2. Plaintiff's Motion for Leave to File Amended Complaint (DN 27) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

January 21, 2020

cc: counsel of record

---

[1] Although Encore argues that the Court possesses supplemental jurisdiction over its claims, "[t]he supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction . . . ." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996) (citations omitted).